UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| -against- | : | 16cr169 |
| | : | |
| PEDRO SERRANO, | : | OPINION & ORDER |
| a/k/a/ "Louis Ortiz," | : | |
| | : | |
| Defendant. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIAM H. PAULEY III, District Judge:

        Defendant Pedro Serrano moves separately for a judgment of acquittal and a new trial under Rules 29 and 33 of the Federal Rules of Criminal Procedure. For the reasons that follow, Serrano's motion for a judgment of acquittal is denied and his motion for a new trial is granted.

### BACKGROUND

        A two-count indictment charged Serrano with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1), and possession of body armor after having been convicted of a felony, in violation of 18 U.S.C. § 931(a). Following motion practice, this Court dismissed the body armor count and Serrano proceeded to trial on the ammunition possession. After two days of testimony and two days of jury deliberations, the jury returned a guilty verdict.

### DISCUSSION

I.  **Motion for Acquittal**

    a. Standard

        Rule 29 requires courts to "enter a judgment of acquittal on any offense for which

1

the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "A defendant bears a heavy burden in seeking to overturn a conviction on grounds that the evidence was insufficient." United States v. Cruz, 363 F.3d 187, 197 (2d Cir. 2004). "[T]he court must evaluate all of the evidence in the light most favorable to the government." United States v. Guadagna, 183 F.3d 122, 131 (2d Cir. 1999). "[T]he critical inquiry . . . must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). A court may not "substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury." United States v. Temple, 447 F.3d 130, 136 (2d Cir. 2006) (quoting Guadagna, 183 F.3d at 129). "If the evidence is such that reasonable jurymen must necessarily have such a doubt, the judge must require acquittal." United States v. Taylor, 464 F.2d 240, 243 (2d Cir. 1972). But, "a conviction will be affirmed if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Cruz, 363 F.3d at 197 (quoting Jackson, 443 U.S. at 319).

      b. Sufficiency of Trial Evidence

To carry its burden under 18 U.S.C. § 922(g)(1), the Government must prove beyond a reasonable doubt that the defendant knowingly possessed ammunition. At Serrano's trial, the Government proceeded on a theory of constructive possession. To prove constructive possession, the Government "needed to adduce evidence that [Serrano] 'knowingly [had] the power and the intention at [the] time to exercise dominion and control" over the ammunition. United States v. Teague, 93 F.3d 81, 84 (2d Cir. 1996) (quoting United States v. Hastings, 918 F.2d 369, 373 (2d Cir. 1990)).

2

### i. Intent to Possess

"Mere proximity or presence is . . . insufficient to support a finding of constructive possession." United States v. Rodriguez, 392 F.3d 539, 548 (2d Cir. 2004). But it also is not "necessary for a defendant to touch or exercise exclusive control over contraband to possess it." United States v. Rios, 856 F.2d 493, 496 (2d Cir. 1988). "What is required is sufficient indicia of dominion and control." Rios, 856 F.2d at 496.

For instance, in United States v. Gaviria, 740 F.2d 174, 185 (2d Cir. 1984), the Second Circuit upheld a jury verdict finding the defendant guilty of possession with the intent to distribute narcotics. The scenario in Gaviria was analogous to the facts of this case:

> Apartment 3B on 35th Street was a stash pad from which almost one and one half pounds of cocaine was seized; that the lease to that apartment was in Valencia's name; that she possessed the keys to the apartment; that there were women's clothes in the closet of the apartment; and that a key from Valencia's key ring opened a metal box found therein which contained a substantial quantity of cocaine.

Gaviria, 740 F.2d at 185. "In view of this and the other evidence," the Second Circuit concluded, "the jury could certainly have concluded that Valencia had the dominion and control necessary to possess the narcotics in apartment 3B." Gaviria, 740 F.2d at 185.

Here, the evidence at trial permitted the jury to find that Serrano exercised dominion and control over the closet and the items therein. Prior to his arrest, Serrano called the police to assist with a domestic dispute. (Tr. at 91.) When the police arrived, Serrano explained that he was living in the apartment and produced his New York State identification card listing the apartment as his address. (Tr. at 92.) Serrano specifically stated the "he's the owner of the apartment and he [had] been living there" with his sister. (Tr. at 93, 95.) He identified the bedroom where the ammunition was found as his own and the other as his sister's. (Tr. at 95.) Serrano also explained to the officer that his girlfriend had destroyed his property in the

3

apartment (Tr. at 96) and asserted his right to have her removed (Tr. at 99). Additionally, when the police returned to conduct a search of the apartment, they found clothes of approximately Serrano's size in the closet (Tr. at 129), and Serrano's expired Texas driver's license on the nightstand (Tr. at 125–26).

Nevertheless, Serrano argues that this case should turn on the fact that the box of ammunition was hidden in the bottom corner of the closet and his contention that he had non-exclusive control over the bedroom closet. Serrano notes that the cases cited by the Government all involved situations in which the contraband was in plain view or the defendant was observed holding the contraband. See Rios, 856 F.2d at 495–95 ("The ledgers were in plain view."); United States v. Fetters, 698 F.3d 653, 657 (8th Cir. 2012) ("Several witnesses saw [the defendant] with a gun while dealing meth."); United States v. Meza, 701 F.3d 411, 421 (5th Cir. 2012) ("[T]he shotgun here was not hidden but rather was found in plain view.").

Serrano claims that the facts here are more analogous to United States v. Rodriguez, 392 F.3d 539, 548 (2d Cir. 2004) and United States v. Samaria, 239 F.3d 228 (2d Cir. 2001), where the contraband was hidden from the defendants' view. In Rodriguez, a jury convicted the defendant for possession of narcotics with the intent to distribute. Rodriguez, 392 F.3d at 541. Rodriguez served as a "lookout" during a transaction between an associate of his and a confidential informant, though he did not necessarily know what the transaction involved. Rodriguez, 392 F.3d at 545–46. The trial evidence showed that the drugs involved in the transaction were stored in the defendant's car, hidden in a plastic bag inside a box behind the driver's seat. Rodriguez, 392 F.3d at 542. Moreover, the defendant may have ridden in the

backseat of his car, next to the box. Rodriguez, 392 F.3d at 548–49.[1] Because the Government failed to offer evidence to show the defendant "exercised dominion or control over the box," the Second Circuit held that there was insufficient evidence to support a theory of constructive possession. Rodriguez, 392 F.3d at 549.

Similarly, in Samaria, a jury convicted the defendant of conspiracy to receive and possess stolen property. Samaria, 239 F.3d at 234. Over the course of the three-month conspiracy, the defendant was present during two deliveries of boxes containing stolen goods. Samaria, 239 F.3d at 234. During one delivery, a box was placed in the defendant's car and he rode along as a passenger. Samaria, 239 F.3d at 239. But "there was no evidence that [the defendant] handled any of the boxes or directed where they were to be taken or what was to be done with them." Samaria, 239 F.3d at 239. Accordingly, the Second Circuit held that the defendant did not "exhibit the dominion and control over the boxes necessary to find that he constructively possessed them." Samaria, 239 F.3d at 239.

Notwithstanding Serrano's argument, the facts of this action are different in a crucial respect. As the Fifth Circuit[2] explained, "'[c]onstructive possession' may be found if the defendant had . . . dominion or control over the premises in which the item is found. [But w]hen a residence is jointly occupied . . . a more exacting standard applies." Meza, 701 F.3d at 419. Because the defendants in Rodriguez and Samaria did not exercise exclusive control over their vehicles—in fact, they were not even driving them—the plain view of the contraband was more relevant.

---

[1] The Second Circuit found that a reasonable juror could not conclude that the defendant rode in the backseat of the car, but it assumed that fact to be true for the purposes of its ruling. See Rodriguez, 392 F.3d at 548–49 ("[E]ven if the jury reasonably could have inferred that Rodriguez was in the back seat of the car, this only would establish his proximity to a box that had heroin concealed inside of it.").

[2] There appears to be no Second Circuit case that directly addresses the issue of non-exclusive possession.

5

Here, on the other hand, the Government presented sufficient facts to allow the jury to conclude that Serrano exercised <u>exclusive</u> possession over the bedroom closet. For instance, Serrano had the police remove his girlfriend from the apartment. (Tr. at 99.) And Serrano and his sister had separate bedrooms. (Tr. at 95.)

Additionally, because "[p]ieces of evidence must be viewed not in isolation, but in conjunction," <u>United States v. Mathews</u>, 20 F.3d 538, 548 (2d Cir. 1994), Serrano's attempt to parse the evidence is not persuasive. The fact that other family members had used the bedroom and stored items in the closet years earlier (Tr. at 422, 448–52), or the fact that the bedroom closet contained some items that were undisputedly not Serrano's, such as women's clothes, jewelry, and purses (Tr. at 464–65), does not require or compel an inference that Serrano lacked exclusive control over the contents of the closet. The Government presented evidence suggesting that no one other than Serrano had lived in the bedroom for the past several years. (<u>See</u> Tr. at 448–55.) Similarly, evidence that Serrano maintained another apartment in the Bronx (Tr. at 474) does not require an inference that he lacked exercise exclusive control over the bedroom closet.

Viewing the evidence in the light most favorable to the Government, there is sufficient evidence to conclude that Serrano exercised exclusive control over the bedroom closet.

    *ii. Knowledge of Ammunition*

Actual knowledge is not required to establish the knowledge element. Instead, this element can be satisfied by proving that the defendant "was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." <u>United States v. Aina-Marshall</u>, 336 F.3d 167, 170 (2d Cir. 2003) (quoting <u>United States v. Rodriguez</u>, 983 F.2d 455, 458 (2d Cir. 1993)).

Construing the evidence in the light most favorable to the Government, the evidence was sufficient to allow the jury to infer that Serrano knew ammunition was in his closet or consciously avoided learning that he was in possession of ammunition. The evidence showed that the ammunition was contained inside a large sportman's dry box in a bedroom closet that measured only 70 inches by 21 inches. (Tr. at 333–34.) The box took up substantial space. (Tr. at 540–41.) And that closet was the only one in Serrano's bedroom (Gov't Exs. 1A, 3) and contained clothes likely belonging to him (Tr. at 129).

This evidence was buttressed by cell-site data. "[A] defendant's knowledge . . . may be established through circumstantial evidence . . . includ[ing] acts that exhibit a consciousness of guilt." United States v. Gordon, 987 F.2d 902, 906–07 (2d Cir. 1993). In the days leading up to October 30, 2015, Serrano visited the neighborhood of the apartment almost daily. But following the police officer's first visit, Serrano only returned to the neighborhood once before he was arrested on November 18, 2015. (Gov't Ex. 204; Tr. at 399.) The jury was entitled to infer from this evidence that Serrano exhibited consciousness of guilt and sought to disassociate himself from the apartment.

Serrano maintains that a reasonable jury could not find the knowledge element satisfied on these facts and that this case is akin to United States v. Torres, 604 F.3d 58, 61 (2d Cir. 2010). In Torres, the defendant was convicted of conspiracy to possess and distribute narcotics. Torres, 604 F.3d at 58. As part of the conspiracy, two boxes of narcotics were shipped through UPS to the defendant, who was to pass the package to another individual. Torres, 604 F.3d at 62, 64. The defendant was arrested when he attempted to pick up the boxes at the UPS store. Torres, 604 F.3d at 64. The Second Circuit found that the defendant was "most likely aware that the packages contained contraband of some kind," but there was no

"evidence that [defendant] knew the packages contained narcotics." Torres, 604 F.3d at 69–70. The Torres court concluded that the evidence was "insufficient to permit the jury to find beyond a reasonable doubt that [the defendant] knew that the [p]ackages . . . contained narcotics, and hence was insufficient to establish that he had knowledge of the purposes of the conspiracy." Torres, 604 F.3d at 70–72.

Serrano contends that like Torres, he was unaware of ammunition in his closet, and even if he knew that some form of contraband was in the box, the Government presented no evidence that he knew it was ammunition. Serrano also argues the trial evidence suggests the ammunition was placed there by someone else because there was no fingerprint evidence indicating that he ever opened or touched it. (Tr. at 290–94.) Moreover, Serrano's parents slept in the same bedroom prior to Serrano occupying the apartment. (Tr. at 452–56; 464–65.) Additionally, Serrano's brother, Andy, who was convicted of possessing and selling firearms, also stored purses used to carry guns in the bedroom closet. (Tr. at 484–87.) And no evidence suggested Serrano knew the details of his brother's illicit activities. (Tr. at 453.)

Nevertheless, Torres is different from this case. In Torres, "[t]here was no evidence of any conduct by Torres other than his efforts to gain possession of the Packages, which . . . did not show that he had knowledge of the Packages' contents," and the defendant was never in a position to have "sole dominion" over the narcotics. Torres, 604 F.3d at 71. By contrast, Serrano resided in the bedroom for a period of years and the jury could conclude that he placed the box of ammunition in the closet.

Moreover, the Government presented substantial evidence to rebut the defense's theory. For instance, Andy Serrano was incarcerated July 2012—more than three years prior to Pedro Serrano's arrest. (Tr. at 487.) And, while the evidence showed that Andy Serrano

possessed and sold firearms in women's purses and that he stored the purses in the apartment's closets, there was no evidence that he stored firearms or ammunition there.[3] (See Def. Ex. LL ("All Maya see was about two to . . . three different girls come to my mom's house at one point in time to pick that shit up with me. . . . she saw me coming with them hand them a purse from the closet and back out the . . . door we go.").) Further, the evidence suggested that no one other than Serrano had lived in the bedroom for the past several years. (See Tr. at 448–55.)

Again, viewing the evidence in the light most favorable to the Government, a jury could reasonably conclude that Serrano knew there was ammunition in his bedroom closet or consciously avoided learning that fact. Accordingly, Serrano's motion for a judgment of acquittal is denied.

II. **Motion for a New Trial**

   a. Standard

Rule 33 permits courts to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Courts have "broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001). "The test is whether it would be a manifest injustice to let the guilty verdict stand." United States v. Guang, 511 F.3d 110, 119 (2d Cir. 2007) (internal quotation marks omitted). A new trial is appropriate if a court "harbor[s] a real concern that an innocent person may have been convicted." Guang, 511 F.3d at 119 (internal quotation marks omitted).

---

[3]  On November 29, 2016, this Court received a letter from Andy Serrano disclaiming ownership of the ammunition in the closet. This Court has no idea what prompted that letter, which was docketed on December 14, 2016. (See ECF No. 82.) On December 15, 2016, Pedro Serrano's counsel responded. (See ECF No. 83.) Both letters are irrelevant to this Court's analysis of the post-trial motions.

b. <u>Conscious Avoidance Charge</u>

Serrano contends, <u>inter alia</u>, that this Court erred in its jury instructions by advising the jury on conscious avoidance without informing them that they could not convict the defendant if they found he actually believed the there was no ammunition in the closet.

"Since 1975, [the Second Circuit has] repeatedly ruled that, although the jury may be instructed in proper circumstances that knowledge of a criminal fact may be established where the defendant consciously avoided learning the fact while aware of a high probability of its existence, the court must include a proviso advising the jury that it cannot find knowledge of the fact if the defendant actually believed the contrary." <u>United States v. Sicignano</u>, 78 F.3d 69, 71 (2d Cir. 1996). The Second Circuit emphasized the importance of including the "actual belief" proviso when it explicitly instructed all United States Attorneys' Offices that they "should request that the 'high probability' and 'actual belief' language be incorporated into every conscious avoidance charge." <u>United States v. Feroz</u>, 848 F.2d 359, 361 (2d Cir. 1988). "It is now settled that whenever 'high probability' language is used in a conscious avoidance instruction, 'balancing' language is necessary to instruct the jury that if they find that the defendant actually believed that his conduct was lawful . . . they must acquit. . . . [And] the Second Circuit has indicated that . . . it will reverse any conviction where the court failed to include the balancing language over a proper objection by the defendant." 1 Leonard B. Sand et al., <u>Modern Federal Jury Instructions—Criminal</u>, Instr. 3A-2 (Mathew Bender 2012) (citing <u>United States v. Schultz</u>, 333 F.3d 393, 413 (2d Cir. 2003).

On June 21, 2016, this Court instructed the jury:

> In determining whether the defendant acted knowingly you may consider whether the defendant deliberately closed his eyes to what would otherwise have been obvious to him. In other words, if you find that the defendant was aware of a high probability that he was in possession of ammunition you may find that the

10

> defendant knowingly possessed it. In deciding whether the defendant had knowledge that he possessed the ammunition you may consider the defendant's proximity to it. But possession of the ammunition may not be found solely on the ground that the defendant was near or close to it. Ultimately, the government must prove that the defendant intended to exercise substantial control over the ammunition in order to establish that he knowingly possessed it.

(Tr. at 596.) This instruction lacked the "balancing language" advising the jury about Serrano's "actual belief." Thus, the relevant issue is whether Serrano's counsel properly lodged and preserved an objection. See United States v. Skelly, 442 F.3d 94, 99 (2d Cir. 2006) (where a defendant "fail[s] to raise a specific objection to the omission of the necessary . . . language from the [jury] charge," he has "thereby forfeited it").

Prior to the start of the trial, the Government proposed a conscious avoidance charge that lacked the necessary balancing language. (ECF No. 42 at 12–14.) At a final pretrial conference, the parties agreed that the Government's requested charge would be revisited after the parties rested, when this Court could consider whether the trial evidence warranted such a charge. (Tr. at 34–36.) But neither party raised any concern regarding the substantive language of the Government's proposed charge.

After both parties rested, this Court held a charging conference to discuss in more detail some of the jury instructions. At that conference, Serrano's counsel objected to language in the Government's proposed conscious avoidance instruction:

> If the Court is inclined to give it, I think the Court needs to give language to that effect, which is included in the Sand instruction, 3(a)-2 about the fact that they must find that the defendant was aware of a high probability that, and then there's an insertion there that I'm not sure what the Court would give but would have to be that there was ammunition in a box in the closet of the bedroom and that the defendant acted with deliberate disregard of that fact.

(Tr. at 508–09 (emphasis added).) When defense counsel paraphrased the relevant Sand instruction, they focused only on the first sentence of a two-sentence paragraph:

11

> If you find that the defendant was aware of a high probability that (e.g., the statement was false) and that the defendant acted with deliberate disregard of the facts, you may find that the defendant acted knowingly.

1 Leonard B. Sand et al., Modern Federal Jury Instructions—Criminal, Instr. 3A-2. This Court agreed with defense counsel's proposal and inserted the "high probability" language later that evening. (Tr. at 524.)

The next morning, Serrano's counsel lodged an additional objection to the conscious avoidance language and asked, for the first time, that this Court include some "balancing language." Specifically, defense counsel proposed the following addition: "However, if you find that Mr. Serrano was not actually aware that ammunition was in the closet, he may not be convicted." (Tr. at 528 (emphasis added.)  But defense counsel offered no legal authority for their proposal.  Moreover, defense counsel misquoted the second sentence in the Sand instruction, which reads:

> However, if you find that the defendant actually believed that (e.g., the statement was true), he may not be convicted.

1 Leonard B. Sand et al., Modern Federal Jury Instructions—Criminal, Instr. 3A-2 (emphasis added).

Having reviewed the relevant Second Circuit authorities cited by Defendant on his motion for a new trial, this Court concludes that the "high probability" language and the "actual belief" language should have been delivered in tandem to the jury.  While Serrano's objection may not have been a model of clarity, the invocation of "balancing language," even if unadorned by case law or Sand's more fulsome instruction, was sufficient.  Serrano's counsel made clear that their concerns were not addressed by this Court's inclusion of the "high probability" language, requested "balancing language," and provided a proposed revision that Serrano could not be convicted if he was not "actually aware that ammunition was in the closet."

12

(Tr. at 528.) The Second Circuit has referred to the "actual belief" instruction as "balancing language" for decades. See, e.g., United States v. Shareef, 714 F.2d 232, 233–34 (2d Cir. 1983) (finding that "[i]nstead of using the 'actual belief' balancing language, the district court apparently adopted" an improper instruction that was not "an acceptable substitute for the balancing charge which incorporates the concept of 'actual belief'"). And the proposal, albeit imperfect, was a good-faith attempt to provide balancing language.

Balancing language is a necessary part of a conscious avoidance jury instruction. See Feroz, 848 F.2d at 361. The importance of such an instruction is amplified here, where Serrano's knowledge, or lack thereof, was pivotal to his defense. To avoid the possibility that "an innocent person may have been convicted," Guang, 511 F.3d at 119, this Court grants Serrano's motion for a new trial.

## CONCLUSION

Serrano's motion for a judgment of acquittal is denied. Serrano's motion for a new trial is granted. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 71 and 73.

Dated: December 15, 2016
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.