```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,            :
                                     :      16cr169 (WHP)
            -against-                :
                                     :      OPINION & ORDER
PEDRO SERRANO,                       :
            a/k/a/ "Louis Ortiz,"    :
                                     :
                        Defendant.   :
-----------------------------------------------------------X
```

WILLIAM H. PAULEY III, United States District Judge:

    Defendant Pedro Serrano moves to suppress historical cell site location information obtained by the Government pursuant to the Stored Communications Act, 18 U.S.C. § 2703(d).  For the reasons that follow, Serrano's motion to suppress is denied.

## BACKGROUND

    On October 30, 2015, the New York Police Department filed a report detailing a physical assault involving Serrano at an apartment located on 80 East 110th Street (the "Apartment").  Shortly thereafter, state law enforcement authorities seized 122 cartridges of ammunition and a bulletproof vest from the Apartment.  On November 18, 2015, Serrano surrendered to authorities to face charges in state court, including possession of bullets.

    On February 1, 2016, while the state charges were pending, Serrano was arrested on federal charges of being a felon in possession of ammunition and a violent felon in possession of body armor.  Following presentment, Serrano provided the U.S. Marshals with his cell phone number and identified the Apartment as his place of residence.  On February 4, 2016, the Government sought an order pursuant to the Stored Communications Act, 18 U.S.C. § 2703(d), for "all available historical cell site location information reflecting the cell towers and sectors thereof utilized in routing any phone, text, or data communication to or from" Serrano's cell

phone, and the approximate range of his phone "from the cell towers during the communication . . . for the period from January 1, 2015 through the date" of the requested order. (Order dated February 4, 2016, Def. Motion to Suppress ("Mot."), Ex. A.) In making the application, the Government informed the magistrate judge that historical cell site information could be obtained without a warrant pursuant to § 2703(d) of the Stored Communications Act. The magistrate judge granted the Government's application, and directed Serrano's service provider, Sprint, to produce all requested cell site location information ("CSLI") recorded within the relevant period.

## DISCUSSION

I. Fourth Amendment

On a motion to suppress, a defendant bears the initial burden of establishing that a government official acting without a warrant subjected him to a search or seizure. United States v. Arboleda, 633 F.2d 985, 989 (2d Cir. 1980). Upon satisfying this burden, the Government must then demonstrate by a preponderance of the evidence that the search or seizure did not violate the Fourth Amendment. Arboleda, 633 F.2d at 989.

The Fourth Amendment protects individuals from intrusions into a place where there is both a subjective and objective expectation of privacy. California v. Ciraolo, 476 U.S. 207, 211 (1986); United States v. Osorio, 949 F.2d 38, 40 (2d Cir. 1991). The third party doctrine is relevant to this Court's inquiry in determining whether the Fourth Amendment applies to CSLI. Under that doctrine, the Supreme Court "consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." Smith v. Maryland, 442 U.S. 735, 743–44 (1979); United States v. Miller, 425 U.S. 435, 442–44 (1976) (holding that bank depositor has no legitimate expectation of privacy regarding deposit information voluntary given to banks).

"While the Second Circuit has yet to address" whether the collection and use of CSLI "fall outside the protections of the Fourth Amendment under the third party doctrine, other Circuits have concluded that they do." United States v. Lambis, 197 F. Supp. 3d 606, 615 (S.D.N.Y. July 12, 2016) (citing United States v. Graham, 824 F.3d 421 (4th Cir. 2016); United States v. Carpenter, 819 F.3d 880 (6th Cir. 2016), cert. granted, No. 16–402, --- S. Ct. ----, 2017 WL 2407484 (June 5, 2017); United States v. Davis, 785 F.3d 498 (11th Cir. 2015); In re U.S. Historical Cell Site Data, 724 F.3d 600 (5th Cir. 2013)). But application of the doctrine has not been universal. See In re U.S. for an Order Authorizing the Release of Historical Cell-Site Info. ("In re Historical Cell-Site Info."), 809 F. Supp. 2d 113, 126 (E.D.N.Y. 2011) ("Applying the third-party-disclosure doctrine to cumulative cell-site-location records would permit governmental intrusion into information which is objectively recognized as highly private."); In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't, 620 F.3d 304, 317 (3d Cir. 2010) (expressing disapproval for the third party doctrine application on CSLI, holding that a "cell phone customer has not 'voluntarily' shared his location information with a cellular provider in any meaningful way").

The tension in the case law regarding Fourth Amendment protection of CSLI arises from society's increasing reliance on cell phone technology. As Serrano notes, "[n]inety-five percent of American adults have a cell phone," with nearly "three quarters of adults with smartphones [ ] being within five feet of their phones most of the time." (Mot. at 4.) The ubiquity and versatility of cell phones today underscore their integral role in everyday life. They are as useful in times of consequence as they are in the quotidian. See In re Historical Cell-Site Info., 809 F. Supp. 2d at 127 ("[It is a] fiction that the vast majority of the American population

3

consents to warrantless government access to the records of a significant share of their movements by 'choosing' to carry a cell phone.").

The relevant question here is whether Serrano voluntarily provided his location to his service provider such that he had no legitimate expectation of privacy in it. The complexity of that question is compounded by the public's general ignorance regarding the mechanics of how cell phones function, the type of information collected by service providers every time a cell phone is used, or the scope and frequency with which such information is recorded. Serrano contends principally that the third party doctrine has no application to CSLI because it is "not knowingly and intentionally conveyed by the cell phone user to anyone but rather generated automatically by radio waves." (Mot. at 15–16.) Serrano argues that cell phone users do not actively submit their location information to service providers, nor are they even aware that such information is recorded by service providers without their express consent.

Though cell phone users do not affirmatively disclose their location to service providers, or understand the breadth of information that is collected through a single phone call, they do know that cell service is necessary to activate their phones. At a minimum, when none of the service bars appear on the interface of a phone, users know that they are "outside the range of the provider company's cell network." Davis, 785 F.3d 511. And when they are in service, they understand that they must "transmit signals to cell towers within range, that the cell tower functions as the equipment that connects the calls, that users when making or receiving calls are necessarily conveying or exposing to their service provider their general location within that cell tower's range, and that cell phone companies make records of cell-tower usage." Davis, 785 F.3d at 511; In re U.S. Historical Cell Site Data, 724 F.3d at 613–14. While most people may not be aware of a cell tower's esoteric functions, they nevertheless understand that by simply

placing a call or receiving a text message, they are voluntarily disclosing <u>something</u> location-based and are cognizant that such information will then be used by service providers for a variety of purposes. That something depends on whether a person is in a high density area with many cell towers, or a less populated area with few towers.

However, that a person voluntarily discloses information to third parties does not end the Fourth Amendment inquiry. Privacy interests in such information may exist depending on their substance and nature. There is, of course, a difference between disclosing the phone numbers that are dialed to call someone and the details of a conversation arising from that call. <u>Smith</u>, 442 U.S. at 743. Here, however, CSLI provides no details about a phone call other than the general vicinity where the user placed or received the call. Voluntarily disclosed location information corresponds not to the user's precise location, but that of the nearest towers. <u>Davis</u>, 785 F.3d at 515 (noting that CSLI reveals only "the cell tower that routed the user's call"). This Court recognizes that urban areas like New York City contain far more cell towers per square mile than a rural area—thus providing greater precision as to where a phone is being used—but ultimately CSLI's value is only as good as the location of the latest towers to have relayed the cell signal. <u>Davis</u>, 785 F.3d at 515 ("While the location of a user may be further defined by the sector of a given cell tower which relays the cell user's signal, the user may be anywhere in that sector.").

Serrano further contends that the Government's possession of nearly thirteen months of CSLI records is overbroad, and that use of such records, if permitted, should be limited to records generated within a three-day period between the date of the domestic dispute (October 30, 2015) and the date on which the warrant for Serrano's arrest was issued (November 2, 2015). From a Fourth Amendment perspective, "reasonable expectations of privacy under the

Fourth Amendment do not turn on the quantity of non-content information [a service provider] collected in its historical cell tower location records." Davis, 785 F.3d at 515. Indeed, "neither one day nor [thirteen months] of such records, produced by court order, violate the Fourth Amendment." Davis, 785 F.3d at 515. Under the Stored Communications Act's "specific and articulable" standard, the Government requested a longer span of historical CLSI to establish Serrano's "habitual residence." (Mot., Ex. B, ¶4(f).) The need for such information arose when Serrano, at his bail hearing, "disputed that he resided at the Apartment, stating instead that his place of residence was with his wife in the Bronx." (Mot., Ex. B, ¶ 4(e).) The Government proffered other reasons substantiating its request for months of historical CSLI, but the most persuasive fact was Serrano's apparent attempt to disassociate himself from the location where the bullets and body armor were found. Therefore, the Government's request to ascertain his whereabouts over the course of several months prior to the domestic incident was proper.

        Perhaps recognizing the need to clarify the contours of the third party doctrine, the Supreme Court granted certiorari to review the Sixth Circuit's decision in Carpenter. No. 16–402, --- S. Ct. ----, 2017 WL 2407484 (June 5, 2017). And in a separate case, as the Fourth Circuit observed, a "per se rule that it is unreasonable to expect privacy in information voluntarily disclosed to third parties seems unmoored from current understandings of privacy." Graham, 824 F.3d at 437. It is almost as if cell phone users must relinquish some privacy interests—at least related to their location—as a prerequisite to using a device so embedded in everyday life. But current Fourth Amendment jurisprudence affords no privacy interest in records created by a third party based on information voluntarily provided. Graham, 824 F.3d at 437 ("[U]ntil the Supreme Court so holds, we are bound by the contours of the third-party

6

doctrine as articulated by the Court."). Accordingly, barring a change from the Supreme Court, the Fourth Amendment provides no relief for Serrano.

II.     Admissibility of the Records

Notwithstanding Fourth Amendment issues, Serrano seeks to exclude evidence that he did not return to the Apartment after October 30, 2015 (except for on November 4th) on the basis that it improperly invites the jury to infer consciousness of guilt. Because Serrano maintained two separate residences—one at the Apartment and another in the Bronx—he claims that "living in a different borough within the same city" after October 30 is not probative of flight or concealment from the authorities.

The Government, however, is free to use this evidence to support its theories, however "novel" Serrano deems them to be. While using such evidence to establish "flight" or "concealment" may strike Serrano as misleading, that is an issue bearing on its weight, not admissibility. This Court need only conclude whether the offered evidence is relevant under Rule 402 to the issues presented at trial. Here, the CSLI bears on Serrano's general whereabouts during the relevant period, including his absence from the Apartment during a two week period preceding his November 18 surrender which, when juxtaposed with his presence at the Apartment in the months preceding October 30, raises a plausible inference that he may have avoided returning to the crime scene. To be sure, Serrano has evidence to counter that adverse inference—that he was advised by his attorney to surrender voluntarily to the police and that the woman he was accused of assaulting continued to reside at the Apartment. Both parties therefore may present their evidence and argue "what conclusions should, or should not, be drawn from" such evidence, and the jury, as the finder of fact, must weigh those competing narratives. United States v. Mundy, 539 F.3d 154, 157 (2d Cir. 2008).

## CONCLUSION

For the foregoing reasons, Serrano's motion to suppress is denied. The Clerk of Court is directed to terminate the motion pending at ECF No. 111.

Dated: July 18, 2017
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.